IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PAUL CORNELIUS BOATMAN,
    Plaintiff,

vs.                                                Case No.: 3:17cv29/RV/EMT

INVESTIGATOR SHANNAN FORTENBERRY, et al.,
    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Paul Cornelius Boatman, proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1). The matter is now before the court on Plaintiff's Second Amended Complaint (ECF No. 8).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that this case should be dismissed.

I.      BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") (*see* ECF No. 8 at 3).[1]  He alleges that on December 10, 2010, while his wife and 17-year-old stepdaughter were in the hospital emergency room waiting to see a doctor, his stepdaughter went to the restroom, gave birth to a baby, and placed the baby in the trash receptacle (*id.* at 6).  Plaintiff alleges a nurse found the baby (*id.*).  Plaintiff alleges his stepdaughter explained to a doctor that she believed the baby was dead, but upon learning that the baby was alive, she wished to keep him (*id.*).  Plaintiff alleges the doctor gave the baby to his stepdaughter (*id.*).  Plaintiff alleges Defendant Shannon Sowry, a hospital security officer employed by the City of Pensacola Police Department ("PPD"), notified the Florida Department of Children and Families ("DCF") of the incident (*id.* at 5).  Plaintiff alleges Defendant Shannan Fortenberry, a PPD officer, came to the hospital and spoke to Plaintiff's wife and stepdaughter (*id.*).

Plaintiff alleges on December 13, 2010, Defendant Vanessa Carmona, an officer with the Escambia County Sheriff's Office ("ECSO"), and Defendant Charlotte Macklin, a DCF investigator, came to his stepdaughter's hospital room while Plaintiff and his wife were visiting (ECF No. 8 at 7).  Plaintiff alleges Carmona and Macklin questioned his stepdaughter as to the identity of the baby's father, and his stepdaughter

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

responded that the father was "a boy she met at school" named Charlton Broughton (*id.*). Plaintiff alleges Carmona and Macklin asked him (Plaintiff) to step outside the room (*id.*). Plaintiff alleges while he was outside the room, Defendants Carmona and Macklin demanded that his wife and stepdaughter permit them to collect DNA samples from his stepdaughter and the baby, but Plaintiff's wife and stepdaughter refused (*id.*). Plaintiff alleges Defendants Carmona and Macklin then threatened to obtain a court order requiring his stepdaughter to provide the DNA, and they threatened that if the DNA proved that Plaintiff was the father, the baby would be removed from his stepdaughter's custody and she would never see the baby again (*id.*).

Plaintiff alleges his stepdaughter was discharged from the hospital into a foster home on December 14, 2010, and the baby was removed from his stepdaughter's custody (ECF No. 8 at 8). Plaintiff alleges on December 17, 2010, his stepdaughter told him that she consented to collection of DNA samples from herself and the baby, because she wanted to see the baby and feared that she would "los[e] her son forever" (*id.*). Plaintiff alleges Defendant Carmona collected the DNA samples (*id.*).

Plaintiff alleges on January 18, 2011, Defendant Carmona obtained a warrant for Plaintiff's arrest for sexual battery upon his stepdaughter (ECF No. 8 at 8). Plaintiff alleges he turned himself in to the ECSO and awaited trial (*id.*). Plaintiff alleges

Defendants Fortenberry, Sowry, and Carmona testified at his trial (*id.* at 9). Plaintiff alleges the jury found him guilty on August 9, 2011 (*id.*).

Plaintiff alleges on December 28, 2014, after several attempts to obtain discovery materials provided to his defense attorneys in the criminal proceedings, Plaintiff received copies of the discovery material, including the investigative reports of Defendants Fortenberry, Sowry, and Carmona (ECF No. 8 at 9). Plaintiff alleges the reports contained several false, misleading, and deceptive statements, which were essential to the finding of probable cause to support the arrest warrant and his prosecution (*id.* at 9–11). Plaintiff alleges Defendants "acted with discriminatory intent" by generating false evidence and hiding the "misconduct" and "abusive interrogation" of his stepdaughter by Defendants Carmona and Macklin (*id.* at 10). Plaintiff alleges the officers procured his stepdaughter's consent (to collect DNA samples) through coercion and duress (*id.*). Plaintiff additionally alleges Fortenberry, Carmona, and Sowry testified untruthfully at his trial, and they intentionally concealed and destroyed exculpatory evidence, and fabricated and planted harmful evidence, which helped secure his conviction (*id.* at 11). Plaintiff alleges the officers conspired to violate his due process rights and his civil rights (*id.*).

Plaintiff claims that Defendants' conduct violated the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, as well as federal criminal statutes, federal

statutes prohibiting disability discrimination, the Federal Tort Claims Act, and the Universal Declaration of Human Rights (ECF No. 8 at 12–14). Plaintiff also asserts several state law claims (*id.*).

Plaintiff seeks an injunction requiring the FDOC to release him from custody (ECF No. 8 at 12). He also seeks compensatory and punitive damages against Defendants Fortenberry, Carmona, and Macklin, for emotional distress, physical injury, mental anguish, depression, anxiety, and stress (*id.* at 12, 14).

II. DISCUSSION

The court is statutorily required to review the Second Amended Complaint to determine whether this action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679 (citation omitted).  The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted).  And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted).  Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Iqbal</u>, 556 U.S. at 679.  In civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . .  A complaint will be dismissed as insufficient where the

allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

### A. Federal Claims

#### 1. Fourth Amendment claims

Plaintiff brings a Fourth Amendment claim of malicious prosecution. To recover for malicious prosecution under § 1983, a plaintiff must prove: (1) the elements of the common law tort of malicious prosecution, and (2) a violation of the Fourth Amendment right to be free from unreasonable seizures. *See* Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (citation omitted). The elements of the common-law tort of malicious prosecution include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. *Id.* (citation omitted).

Here, Plaintiff's factual allegations fail to satisfy the third element. Plaintiff alleges he was convicted of the sexual battery and is still serving his sentence for that conviction. He thus cannot show that the prosecution terminated in his favor. Accordingly, Plaintiff's Fourth Amendment claim for malicious prosecution should be dismissed with prejudice.

To the extent Plaintiff seeks to assert a Fourth Amendment claim of illegal search and/or seizure based upon Defendants' allegedly using coercion and duress to obtain his stepdaughter's consent to collect DNA samples from herself and the baby, Plaintiff does not have standing to assert such a claim.  Under Fourth Amendment law, the standing and search and seizure inquiries "merge into one: whether governmental officials violated any legitimate expectation of privacy held by petitioner[/plaintiff]." Rawlings v. Kentucky, 448 U.S. 98, 106, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). Fourth Amendment rights are personal and may not be vicariously asserted.  *See* Alderman v. United States, 394 U.S. 165, 174, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969); *see also* Rakas v. Illinois, 439 U.S. 128, 138–43, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).

Here, Plaintiff may not vicariously assert his stepdaughter's Fourth Amendment rights with regard to the collection of DNA from her.  Further, Plaintiff may not sue on her behalf, since she reached the age of majority by the time Plaintiff filed this lawsuit in January of 2017 (Plaintiff's stepdaughter was 17 years old in 2010).  As to the baby (who is now still a minor), Plaintiff does not bring suit on the child's behalf, nor does Plaintiff allege he has standing to do so (e.g., as the child's parent). Therefore, Plaintiff's Fourth Amendment claim of illegal search and/or seizure with respect to the collection of DNA samples from his stepdaughter and her child should be dismissed with prejudice.

### 2. Fifth, Sixth, Eighth, and Fourteenth Amendment claims

Plaintiff claims that Defendants' conduct (i.e., testifying falsely at his trial, intentionally concealing and destroying exculpatory evidence, and fabricating and planting evidence that helped secure his conviction) violated his due process rights, his right to compulsory process for obtaining witnesses in his behalf, his right to a fair trial and procedural due process, and his right not to be subjected to cruel and unusual punishment (ECF No. 8 at 12). As previously noted, Plaintiff seeks release from prison and monetary damages (*id.*).

The Supreme Court has held that a prisoner in state custody may not use a § 1983 action to challenge "the fact or duration of his confinement." Preiser v. Rodriguez, 411 U.S. 475, 489, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973); *see also* Wolff v. McDonnell, 418 U.S. 539, 554, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); Heck v. Humphrey, 512 U.S. 477, 481, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). The Supreme Court held in Heck that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486–87 (footnote omitted). The most obvious example of an action barred by Heck is one in which the plaintiff actually "seek[s] damages directly attributable to [his] conviction or confinement." Heck, 512 U.S. at 487. That is what Plaintiff seeks here, namely, compensatory and punitive damages against Defendants Fortenberry, Carmona, and Macklin for emotional distress, physical injury, mental anguish, depression, anxiety, and stress caused by his conviction and incarceration. Before he may seek relief in this court under § 1983, he must obtain invalidation of his conviction through habeas corpus or other appropriate state remedy. Until Plaintiff does so, his Fifth, Sixth, Eighth, and Fourteenth Amendment claims for monetary damages are barred by Heck.

With respect to Plaintiff's request to be released from incarceration, Plaintiff must pursue his constitutional challenges to his conviction in a habeas corpus action under 28 U.S.C. § 2254. See Preiser, 411 U.S. at 500 ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

### 3. Fourteenth Amendment equal protection claim

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). To state a claim under the Equal Protection Clause, a plaintiff generally must allege "that (1) he is similarly situated with other persons who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted). Thus, in order to assert a viable equal protection claim, a plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). The plaintiff must also allege that the defendant acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

The Equal Protection Clause is also implicated in "class of one" claims. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006). A "class of one" equal protection claim does not allege discrimination against a protected class, but rather it alleges that the plaintiff "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)). The same strict "similarly situated" standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination. Id. at 1204–05. Indeed, the "similarly situated" requirement must be rigorously applied in the context of "class of one" claims. See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n, 558 F.3d 1301, 1306 (11th Cir. 2009).

In this case, Plaintiff does not allege he is similarly situated with other persons who received more favorable treatment than he. Plaintiff's allegations therefore fail to state a plausible equal protection claim.

### 4. Claims under 18 U.S.C. §§ 241, 242, 371

Plaintiff's claims under 18 U.S.C. §§ 241, 242, and 371 are frivolous. A private individual cannot bring an individual action under any of these statutes, because they are criminal statutes, and the power to prosecute criminal cases is vested exclusively

in the Executive Branch.  *See* Chen ex rel. V.D. v. Lester, 364 F. App'x 531, 536 (11th Cir. 2010) (unpublished but recognized for persuasive authority) (citing Love v. Delta Air Lines, 310 F.3d 1347, 1352–53 (11th Cir. 2002)); Higgins v. Neal, 52 F.3d 337 (10th Cir. 1995); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (noting that "[o]nly the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242"); *see also* Dugar v. Coughlin, 613 F. Supp. 849 (S.D.N.Y. 1985) (no private right of action under federal criminal statutes); Powell v. Kopman, 511 F. Supp. 700, 704 (S.D.N.Y. 1981) (same).  Further, Plaintiff has no constitutionally protected interest in the criminal prosecution of another.  *See* Otero v. U.S. Attorney Gen., 832 F.2d 141 (11th Cir. 1987) (a private citizen has no judicially cognizable interest in the criminal prosecution of another) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973)); Sattler v. Johnson, 857 F.2d 224, 226–27 (4th Cir. 1988) (private citizen has no constitutional right to have other citizens, including state actors, criminally prosecuted); *see also, e.g.*, O'Berry v. State Attorneys Office, 214 F. App'x 654 (11th Cir. 2007) (unpublished but recognized for persuasive authority) (affirming district court's finding that a private citizen cannot force the United States Attorney General to bring a criminal prosecution against another citizen).  Therefore, Plaintiff's claims of alleged violations of federal criminal statutes are frivolous and should be dismissed with prejudice.

5. <u>Claims under federal disability statutes</u>

Plaintiff asserts claims under the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101–12213), the Rehabilitation Act of 1973 (29 U.S.C. §§ 701–796l), the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621–634), and the Individuals with Disabilities Education Act (20 U.S.C. §§ 1400–1482) (ECF No. 8 at 13–14).

Plaintiff's complaint is completely devoid of any factual allegations that support a claim for relief under any of the federal disability statutes. Therefore, his claims should be dismissed for failure to state a claim.

6. <u>Universal Declaration of Human Rights</u>

Plaintiff also includes the Universal Declaration of Human Rights in the list of laws that Defendants allegedly violated. The Universal Declaration of Human Rights itself is non-binding, and does not provide a private cause of action. *See* <u>Sosa v. Alvarez–Machain</u>, 542 U.S. 692, 734–35, 124 S. Ct. 2739, 159 L. Ed. 2d 719 (2004); *see also, e.g.*, <u>Konar v. Illinois</u>, 327 F. App'x 638, 640 (7th Cir. 2009) (unpublished). Therefore, Plaintiff's claims for alleged violations of the Declaration are frivolous and should be dismissed with prejudice.

7. <u>Federal Tort Claims Act</u>

Plaintiff asserts, "Federal Tort Claims Act claims are authorized" (ECF No. 8 at 13). The FTCA permits claims for certain negligent or wrongful actions committed by federal employees within the scope of their official duties. 28 U.S.C. § 1346(b)(1) (2007). Plaintiff's allegations cannot support a claim under the FTCA because Defendants are state actors, not federal actors. *See* 28 U.S.C. § 1346(b)(1), *see also, e.g.,* Amesbury v. Kearney, 154 F. App'x 118, 119 (11th Cir. Sept. 30, 2005) (plaintiff's allegedly unlawful arrest and imprisonment by state officer did not support claim under FTCA because the allegations involved behavior by a state, rather than a federal, actor) (unpublished but recognized as persuasive authority); Brewer v. Meadows, No. 3:15cv95/RV/EMT, 2016 WL 3675503, at *5 (N.D. Fla. June 6, 2016), *Report and Recommendation Adopted by* 2016 WL 3676522 (N.D. Fla. July 7, 2016) (unpublished); Brewer v. Pensacola Police Dep't, No. 3:15cv469/MCR/CJK, 2015 WL 8113253, at *3 (N.D. Fla. Nov. 13, 2015), *Report and Recommendation Adopted by* 2015 WL 8207502 (N.D. Fla. Dec. 7, 2015) (unpublished). Therefore, Plaintiff's claim under the FTCA should be dismissed with prejudice as frivolous.

B.     State Law Claims

It is well established that once a Plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. *See* Baggett v.

First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. U. . Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *See* Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that Plaintiff's state law claims should be dismissed to permit him to pursue them in a more appropriate forum. While it would be convenient for Plaintiff to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support

retaining jurisdiction of Plaintiff's state claims and delaying justice in other cases. Furthermore, the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. Moreover, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); Personalized Media Commc'ns, LLC v. Scientific-Atlantic, Inc., 493 F. App'x 78, 82 n.1 (11th Cir. 2012) ("'Section 1367(d), giving the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction, removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears.'") (citation omitted). In Krause v. Textron Fin. Corp., 59 So. 3d 1085 (Fla. 2011), the Supreme Court of Florida held that Florida state law claims are tolled while they are pending in federal court, and the plaintiff shall have 30 days after dismissal by the federal court to re-file in state court. *See id.* (citing 28 U.S.C. § 1367). This is specifically "to prevent the limitations period from expiring" on any Florida state law claim while it is being pursued in federal court in conjunction with the federal claim. *Id.* at 1091. Therefore, Plaintiff's pursuit of any state law claim in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over those claims.

Case No.: 3:17cv29/RV/EMT

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Plaintiff's Fourth Amendment and Fourteenth Amendment equal protection claims be **DISMISSED with prejudice**, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

2. That Plaintiff's Fifth, Sixth, Eighth, and remaining Fourteenth Amendment claims be **DISMISSED without prejudice** as Heck-barred.

3. That Plaintiff remaining federal claims be **DISMISSED with prejudice** as frivolous.

4. That Plaintiff's state law claims be **DISMISSED without prejudice** to his pursuing them in state court.

5. The clerk be directed to enter judgment accordingly and close the file.


At Pensacola, Florida, this 22nd day of March 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different**

**deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.